UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PRISCILLA DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BOARD OF SCHOOL TRUSTEES OF | ) |
| ANDERSON COMMUNITY SCHOOL | ) 1:14-cv-00279-RLY-DKL |
| CORPORATION, and | ) |
| ANDERSON COMMUNITY SCHOOL | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Priscilla Davis, is a teacher employed by the Anderson Community School Corporation ("ACSC"), located in Anderson, Indiana. Following the recommendation by the Board of Review of the ACSC Peer Assistance and Review ("PAR") Program that Plaintiff's Teacher Contract should be cancelled, Plaintiff brought the present declaratory judgment action against the Defendants, the Board of School Trustees of the ACSC and the ACSC ("School Board"), asking for a declaration that the procedures stated in the ACSC's PAR Guidelines violate the due process clauses of the Indiana and United States Constitutions, and are void for vagueness under Article 1, § 12 of the Indiana Constitution, and that ACSC breached her Teacher's Contract, the PAR Guidelines, and her Contract with the Anderson Federation of Teachers ("Union Contract") by, *inter alia*, failing to give her the support necessary for her special needs

1

classroom, failing to give her teaching/instructional materials necessary to properly instruct her students, and by failing to give her a preparatory period and lunch period. Defendants now move for summary judgment. For the reasons set forth below, the Defendants' motion is **GRANTED**.

I.     **Factual Background**

The facts in this case are undisputed, and center upon Plaintiff's participation in the PAR Program. The PAR Program is the product of an agreement between ACSC and the Anderson Federation of Teachers, and establishes certain contractual procedures that will be followed prior to a principal initiating the statutory contract cancellation process due to inadequate teaching performance. (Defendants' Ex. 1, Declaration of Eric Creviston ("Creviston Dec.") ¶ 24). It is also used as a means to evaluate first-year teachers. (*See* PAR Handbook and Forms at 2-5).

The process begins for a "non-first year teacher" through a referral to the PAR Program by the building Principal or the Teachers' Union building committee. (*Id*. ¶ 29; Defendants' Ex. 3, PAR Handbook and Forms at 6). A consulting teacher is appointed to observe the teacher, and prepares a report to the PAR Board of Review (or "Board") of his or her observations and recommendations. (Creviston Dec. ¶ 31; PAR Handbook and Forms at 6). The Board of Review is a nine (9) member committee composed of four (4) administrators appointed by the Superintendent and five (5) teachers appointed by the President of the Teacher's Union.

A teacher is placed in the PAR Program if the Board of Review, after considering the consulting teacher's report, determines the teacher should be placed in step one of the

program, known as "Assistance." (PAR Handbook and Forms at 6-10). If the teacher is not successful in the Assistance step of PAR, the Board of Review places the teacher in "Intervention." (*Id*. at 11-16). After referral to the Intervention phase, a teacher has the right to have an independent arbitrator review the process to determine whether all the procedural steps in the PAR Guidelines had been complied with before placement in Intervention. (*Id*. at 13 ¶ 1). If the arbitrator finds the procedural steps have been properly followed, and the teacher is not successful in the Intervention phase, six (6) of the nine (9) Board of Review members must affirmatively vote to make a recommendation to ACSC to start the statutory teacher contract cancellation process provided for in Title 20, Article 28, Chapter 7 of the Indiana Code. (*Id*. at 14 ¶ 1). This statutory process may only begin when the Principal serves the teacher a written preliminary decision of contract cancellation. (Creviston Dec. ¶ 22).

Plaintiff is a licensed teacher assigned to Eastside Elementary School, is a member of the Anderson Federation of Teachers, and is employed subject to a Teacher's Contract, signed by Plaintiff and the ACSC. (Defendants' Ex. 2, Plaintiff's Teacher Contract). In early February 2013, Plaintiff was referred to the PAR Program, and was assigned a consulting teacher, Don Hartzell, who observed her on two (2) separate occasions. (Creviston Dec. ¶¶ 30, 32; Defendants' Ex. 5, Board of Review Report at 1). Mr. Hartzell then prepared a report to the PAR Board of Review of his observations and recommendations of Plaintiff. (*Id.* ¶ 33). Based on Mr. Hartzell's report, the Board of Review voted to assign Plaintiff to Intervention on September 24, 2013. (Defendants' Ex. 17, Board of Review Report at 1). Plaintiff had an independent arbitrator review the

3

process; the arbitrator found the process was consistent with the PAR Guidelines. (Defendants' Ex. 16, Board of Review Minutes at 1).

On November 8, 2013, Plaintiff was placed in the Intervention phase. (Defendants' Exs. 18-21, November-December 2013 Observation Reports). Mr. Hartzell conducted four observations of her in November and December 2013. (*Id.*). Following his observations, Mr. Hartzell prepared a report and met with the Board of Review to assist it in determining the next step for Plaintiff. (Defendants' Ex. 17, Board of Review Report).

On January 15, 2014, the Board of Review voted 9-0 to recommend that ACSC commence the statutory teacher contract cancellation process pursuant to Title 20, Article 28 of the Indiana Code. (Defendants' Ex. 16, Board of Review Minutes at 3). The Board notified Plaintiff of the decision by letter, placed her on administrative leave with pay, and informed her of her right to appeal to the Board to reconsider its decision, which had to have been filed in writing within five (5) days of receipt of the letter. (Defendants' Ex. 22, Board of Review Written Notice at 1; Creviston Dec. ¶¶ 37-38). Following several continuances, on the day her appeal was to proceed, February 19, 2014, the ACSC was served with an Order on Plaintiff's Motion for Emergency TRO and Preliminary Injunctive Relief issued by the Madison Circuit Court, Division V, ordering that the appeal hearing scheduled for that day be "continued until further order of this Court." (Defendants' Ex. 23, State Court Order at 2; Creviston Dec. ¶ 44).

On February 25, 2014, Plaintiff's case was removed to this court, and on July 9, 2014, the court dissolved the injunction issued by the Madison Circuit Court.

4

## II. Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Where, as here, the facts are not in dispute, the issue is one of law, making summary disposition especially appropriate.

## III. Discussion

### A. Federal Constitutional Claims

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. In order to prevail on her procedural due process claim, Plaintiff must demonstrate: "(1) a cognizable property interest; (2) a deprivation of that interest; and (3) a denial of due process." *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014). The threshold question under such an examination is whether a property interest actually exists. *Buttita v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993). "Although the Fourteenth Amendment protects property rights, it does not create them. Instead, property rights 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Price*, 755 F.3d at 607 (quoting *Frey Corp. v. City of Peoria,* 735 F.3d 505, 509-10 (7th Cir. 2013)). A property right in a benefit, such as continued employment, "can arise from a statute, regulation, municipal ordinance, or an express or implied contract. . . ." *Id.* (citing *Covell v. Menkis*, 595 F.3d 673, 675-76 (7th Cir. 2010)). A

property interest exists in continued employment, for example, "when an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met." *Buttita v. City of Chicago*, 9 F.3d 1198, 1202 (7th Cir. 1993) (quoting *Colburn v. Trustees of Indiana Univ.*, 973 F.2d 581, 589 (7th Cir. 1992)).

Both parties agree that Plaintiff has a property right in continued employment with ACSC, and that the source of that property right is found in Indiana's Teacher Tenure Act, Indiana Code § 20-28-7.5 *et seq*. The parties further agree that the procedures set forth in that chapter provide constitutionally adequate due process. The disputed issue here is whether Plaintiff's property right in her continued employment extends to the PAR process.

### 1. Cancellation of her Teacher's Contract

Plaintiff claims that, by virtue of her Teacher's Contract, the Union's Collective Bargaining Agreement, and the Teacher Tenure Act, she has a legitimate claim of entitlement to a due process hearing at the Board's final evaluation hearing. The "legitimate claim to entitlement" language was first introduced in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), a case upon which Plaintiff relies. There, the respondent was a first-year assistant professor at Wisconsin State University subject to a contract for a fixed term of one academic year. *Id*. at 566. The president of the university informed the respondent that he would not be re-hired for the upcoming academic year, but provided no reason for the decision and no opportunity to challenge the decision. *Id*. at 578. The Supreme Court found for the university, and held that the respondent had no legitimate claim to entitlement to continued employment because the

terms of his contract provided no interest in re-employment. *Id.* Accordingly, he was not entitled to due process prior to the university's decision.

Plaintiff also relies on *Perry v. Sindermann*, 408 U.S. 593 (1972), decided on the same day as *Roth*. In *Perry*, the Board of Regents of one of the state colleges in Texas decided not to renew the one-year teaching contract of one of its professors. *Id*. at 595. Like the respondent in *Roth*, he argued he was entitled to be heard before the final decision was made. *Id*. Citing to the college's official "Faculty Guide" and the Coordinating Board of the Texas College and University System's guidelines, both of which provided that respondent has some form of job tenure, the Supreme Court held:

> The respondent has alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent 'sufficient cause.' . . . . [W]e agree that the respondent must be given the opportunity to prove the legitimacy of his claim of such entitlement in light of 'the policies and practices of the institution.' Proof of such a property interest would not, of course, entitle him to reinstatement. But such proof would obligate college officials to grant a hearing at his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency.

*Id*. at 603-04.

Neither *Roth* nor *Perry* is directly on point. The issue in those cases was whether the petitioner had a legitimate expectation of continued employment, and if so, whether some form of procedural process was due prior to the decision to terminate his employment. Here, it is undisputed that Plaintiff has a right to continued employment, Plaintiff's employment contract has not been terminated, and that she has a due process right, provided for in the Teacher Tenure Act, to be heard prior to a final decision by the School Board. There is nothing in either *Roth* nor *Perry* supporting Plaintiff's argument

7

that "statutes and rules that already provide teachers due process – including customs – can be a basis for the expectation for further process," particularly where, as here, the Board of Review made a *recommendation* – not a final decision – to the ACSC to cancel her Teacher's Contract. Accordingly, Plaintiff did not have a legitimate claim of entitlement to notice and an opportunity to be heard at the Board of Review's evaluation meeting.

Lastly, Plaintiff relies on *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) for the proposition that the PAR Program is susceptible to "minimum procedural requirements" under federal constitutional law, notwithstanding the Teacher Tenure Act. The Supreme Court's discussion of "minimum procedural requirements" arose from the fact that the Cleveland Board of Education terminated the petitioner from his position as a security guard, but the Ohio statute which pertained to his employment did not provide him with an opportunity to respond to the Board prior to termination. *Id*. at 536. The Supreme Court held that, even though the state statute that created the petitioner's property right to continued employment also specified the procedures for discharge, the Due Process Clause demanded more. *Id*. at 541-42. "[W]e pointed out that "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." *Id*. at 541 (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)).

As noted previously, Plaintiff agrees that procedures under the Teacher Tenure Act satisfy the constitutional requirement of due process. Therefore, the "minimum

8

requirements" language from *Loudermill* is inapplicable and provides no support for her contention that the PAR Program – a set of contractual procedures for evaluations and for providing recommendations prior to potentially proceeding under the Teacher Tenure Act – contains certain procedural due process guarantees.  Because Plaintiff's property interest in her continued employment has not been terminated and ACSC has not begun the process to terminate her employment, Plaintiff's due process challenge to the Board of Review's recommendation is without merit.

### 2. Suspension with Pay

Plaintiff argues that she was entitled to notice and an opportunity to be heard prior to the Board of Review's decision to suspend her with pay.  It is well-settled that a suspension with pay does not constitute the deprivation of a property right subject to federal constitutional protections.  *Townsend v. Vallas*, 256 F.3d 661, 676 (7th Cir. 2001) (finding that, even if a tenured teacher's temporary reassignment was tantamount to a suspension, "under existing law, a suspension with pay would not constitute the deprivation of a property right subject to federal constitutional protections") (citing *Gilbert v. Homar*, 520 U.S. 924, 935 (1997) (finding that petitioner, who was suspended *without* pay following his arrest, was entitled only to prompt post-suspension hearing); *Loudermill*, 470 U.S. at 544-45 (1985) (finding that, "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay"); *Levenstein v. Salafsky*, 164 F.3d 345, 351 (7th Cir. 1998) ("Levenstein is *not* arguing that the initial act of suspending him with pay violated any constitutional right, and he is wise not to do so . . . ."); *Crim v. Bd. of Educ.*

*of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 546-47 & n. 25 (7th Cir. 1998) ("We explained that he would have had a due process claim if he had been suspended without full pay . . . ."). Accordingly, Plaintiff's due process challenge to the Board of Review's decision to suspend her with pay is dismissed.

### B. State Constitutional Claims

Plaintiff's federal constitutional claims having been dismissed, the court must next determine whether to take supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367. That determination turns on whether the state law claims are "so closely related to the plaintiff's federal-law claims as to be in effect part of the same case." *Williams Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007). Here, Plaintiff's state law constitutional and breach of contract claims arise out of the same set of facts as her federal constitutional claims. Therefore, the court elects to take supplemental jurisdiction over those claims.

#### 1. Indiana Due Course of Law Claim

Plaintiff brings a due course of law claim under Article 1, Section 12 of the Indiana Constitution. That section provides, in relevant part: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Indiana's Due Course of Law requirement is analogous to the Due Process Clause of the Fourteenth Amendment, and thus, the two provisions are analyzed the same. *See Lake of the Woods v. Ralston,* 748 N.E.2d 396, 400, n. 1 (Ind. Ct. App. 2001) ("[T]he Due Course of Law requirement of Article 1, Section 12 of the Indiana Constitution is analogous to the Due Process Clause of the Fourteenth

10

Amendment to the Federal Constitution."). Accordingly, for the reasons articulated in the previous sections, Plaintiff's due course of law claim must be dismissed, and Plaintiff's void for vagueness challenge must also be dismissed.

### 2. Void for Vagueness

Plaintiff alleges that the PAR Program procedures are unconstitutionally vague under Article 1, Section 12 of the Indiana Constitution "in that they fail to specify in full detail the procedures and practices of who can actually suspend a teacher at ACS[C] when that teacher is in PAR." (Am. Compl. ¶ 36(c)). Defendants argue, without citation to authority, that the PAR Guidelines "do not confer any constitutional rights," and thus, the claim must be dismissed. Plaintiff did not respond to this argument.

The void-for-vagueness doctrine applies generally to penal statutes, and requires that those statutes be written "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citation omitted); *see also Wells v. State*, 848 N.E.2d 1133, 1145 n.6 (Ind. Ct. App. 2006) ("Indiana courts have reviewed claims of unconstitutional vagueness in the same manner, whether the defendant invokes the United States Constitution, the Indiana Constitution, or both.") (citing *Bemis v. State*, 652 N.E.2d 89, 92 (Ind. Ct. App. 1995)). "A statute is not void for vagueness if individuals of ordinary intelligence would comprehend it to fairly inform them of the generally proscribed conduct." *Helton v. State*, 624 N.E.2d 499, 505-06 (Ind.Ct. App. 1993) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 607-08 (1973)).

Plaintiff's challenge fails for two reasons. First, the PAR Guidelines are not analogous to a penal statute. The PAR Program is simply an evaluation tool, and the guidelines outline the procedural steps involved in that process. Second, Plaintiff's challenge is not one of vagueness; rather, her challenge is simply that the Board of Review did not have the authority[1] to suspend her with pay.

### 3. Breach of Contract

Finally, Plaintiff alleges Defendants breached her Teacher's Contract, her Union Contract, and the PAR Program Guidelines by: (1) failing to give her the support necessary for her special needs classroom, (2) failing to give her teaching/instructional materials necessary to properly instruct her students, (3) failing to give her a preparatory period, (4) failing to give her a lunch period, and (5) not allowing her any continuing education assistance with meaningful courses. (Am. Compl. ¶ 36(d)(1)-(5)). She further alleges that these violations adversely affected her teaching performance, and were used as a pretext to terminate her Teaching Contract. (*Id*. ¶ 36(e)). "In other words, and in simpler terms, the detriments caused by the school system are now being used against [Plaintiff]." (*Id*.).

---

[1] Plaintiff's challenge does give the court pause. The PAR Guidelines do not explicitly state that the Board of Review has the power to temporarily suspend a teacher with or without pay. The court's research reflects that a school board has the authority to temporarily suspend a teacher during the contract cancellation process, IND. CODE § 20-28-7.5-4, and in appropriate circumstances, *Board of Trustees of Hamilton Heights School Corp. v. Landry*, 560 N.E.2d 102, 105-07 (Ind. Ct. App. 1990). However, no Indiana case has addressed whether an administrative body like the Board of Review has that authority. Whether it has that authority is an issue that the Board of Review may need to address. *See Wynn v. Bd. of Educ. of School Dist. No. 159*, 815 F.Supp.2d 1007, 1013 (N.D. Ill. 2011) ("When a school board takes an action that is prohibited by law or otherwise beyond the board's lawful authority, that action is ultra vires and void.").

Defendants maintain that Plaintiff does not allege an independent claim for breach of contract; rather, her allegations are limited to supporting her due process claims. The court does not agree, as her claim may be interpreted in one of two ways. First, Plaintiff's claim may be interpreted as a breach of contract claim. Plaintiff testified by affidavit that she was denied the five (5) items/benefits listed above. (Plaintiff's Ex. 1, Affidavit of Priscilla Davis ¶ 31(a)-(e)). In addition, Plaintiff's Union Contract guaranteed the right to a duty-free thirty (30)- minute lunch period and a duty-free forty-five (45)-minute preparation period. (Plaintiff's Am. Compl., Ex. 5, Union Contract at 31-32). The problem here is that Plaintiff specifically states in her Response that she is not seeking "monetary damages – only a determination from a state court that [ACSC] did not follow her contract and union contract, and this breach caused an impact in her classroom." (Resp. Br. At 27). In Indiana, an essential element of a claim for breach of contract is damages. *Corry v. Jahn*, 972 N.E.2d 907, 913 (Ind. Ct. App. 2012). Plaintiff's statement that she is not seeking damages is fatal to her claim.

Second, Plaintiff's claim may be interpreted as a means to argue that she should have been allowed to attend the Board's final evaluation hearing and to speak in her defense, and that the Board's decision to suspend her with pay violated due process. (*See, e.g.* Plaintiff's Response at 29 ("[I]t just makes good sense that procedural due process must attach to any stage of the suspension/termination process, otherwise, ACS, cities, counties, states, local government bodies and other school boards are completely free to devise BOR [Board of Review]-like procedures that, in turn, immunize state

actors from the reach of the 14th Amendment."). The court's position on that issue has already been decided.

## IV. Conclusion

Defendants' Motion for Summary Judgment (Filing No. 11) is **GRANTED**.

**SO ORDERED** this 13th day of August 2014.

                                          RICHARD L. YOUNG, CHIEF JUDGE
                                          United States District Court
                                          Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.